```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

<u>Adel A. Fadili</u>

  v.           Civil No. 12-cv-68-JD
               Opinion No. 2014 DNH 048

<u>Deutsche Bank National</u>
<u>Trust Company, as Trustee for</u>
<u>Long Beach Mortgage Loan Trust, 2006-5</u>

## O R D E R

Adel A. Fadili brought a petition to quiet title to property located in Alton, New Hampshire. The defendant, Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust, 2006-5, removed the case to this court. The case was consolidated with two related cases, and the cases are being considered, ad seriatim, pursuant to the court's order of May 16, 2012, (document no. 13). Fadili and Deutsche Bank have filed cross motions for summary judgment.

### <u>Standard of Review</u>

Cross motions for summary judgment proceed under the same standard applicable to all motions for summary judgment, but the motions are addressed separately. <u>Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund</u>, 724 F.3d 129, 138 (1st Cir. 2013).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case."  <u>Jakobiec v. Merrill Lynch Life Ins. Co.</u>, 711 F.3d 217, 223 (1st Cir. 2013) (internal quotation marks omitted).  In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant.  <u>Kenney v. Floyd</u>, 700 F.3d 604, 608 (1st Cir. 2012).

<u>Background</u>

This case and the two related cases arose from the sale of property located in Alton, New Hampshire, among members of the Fadili family.  The property was subject to mortgages entered into for each transaction.  Although the parties intended by the pertinent transactions to transfer and mortgage lakefront property that included a house and other buildings, the deeds and mortgage documents described a different and unimproved lot.

Adel Fadili acquired property in Alton that was comprised of several lots.  Two parcels are at issue here:  a lot without improvements ("Vacant Lot") and a lakefront lot with a house, garage, and dock ("House Lot").  A right of way, which was first known as Mount Major Road, or Mount Major Park Road, and which is now known as Roger Road, goes through both the Vacant Lot and the House Lot.  The Vacant Lot had no street address, while the House Lot was referred to as 132 Roger Road.  The Vacant Lot was

subject to a mortgage and conditional assignment of rents and leases from Adel and Denise Fadili to the Trustee of the Apogee Trust, which is dated January 3, 1997.

In December of 2001, Adel Fadili entered a into purchase and sale agreement to sell property "located at Mount Major Rd" to his son, Amir Fadili. Amir obtained a loan to purchase the property, and the mortgage described the Vacant Lot as the mortgaged property. The warranty deed dated January 16, 2002, from Adel to Amir included the same legal description of the Vacant Lot but the description included the phrase "with the buildings thereon." There were no buildings on the Vacant Lot. Amir's mortgage on the property was assigned several times to different entities.

On January 20, 2006, Amir entered into a purchase and sale agreement with his sister, Alia Fadili, to sell the property that he had purchased from Adel. Alia obtained a loan to finance her purchase from Long Beach Mortgage Company. The mortgage described the property that secured the loan as the Vacant Lot but also stated that the property had the address of 132 Roger Road, which was the address of the House Lot. The warranty deed from Amir to Alia, dated April 27, 2006, recites the same property description as used in the warranty deed from Adel to Amir and does not include a street address. Stewart Title Company was the closing agent for that transaction. Alia's mortgage was eventually assigned to Deutsche Bank.

In the meantime, on August 4, 2000, the Town of Alton recorded a tax lien for unpaid real estate taxes on the Vacant Lot. When the taxes were not paid, the Alton Tax Collector conveyed the Vacant Lot to the Town of Alton by tax collector's deed on October 1, 2002. On July 18, 2005, the Trustee of the Apogee Trust, holder of Adel's mortgage on the Vacant Lot, forwarded payment to the town, and the Vacant Lot was deeded back to Adel, by quitclaim deed, on August 3, 2005.

Adel filed for Chapter 7 bankruptcy in early 2005. His bankruptcy estate included the House Lot. The bankruptcy trustee filed a notice of intent to sell the House Lot at public auction in July of 2008. Adel and Washington Mutual, as servicer of the Alia's mortgage, objected to the sale, arguing that Adel had intended to convey the House Lot to Amir, which Amir then conveyed to Alia, for which Alia obtained a mortgage. Washington Mutual argued that the mortgage was intended to secure a loan based on the value of the House Lot, not the Vacant Lot. The objections were unavailing, and the House Lot was sold as part of the bankruptcy proceeding.

Because Alia stopped making mortgage payments in August of 2008, Deutsche Bank notified Alia that it would foreclose on the mortgaged property. When the issue about what property was subject to the mortgage arose, Deutsche Bank brought suit against Alia, Stewart Title Company, and Stewart Title Guaranty Company, 09-cv-385-JD, and Alia brought counterclaims against Deutsche

Bank. Adel brought a quiet title action against Deutsche Bank, 12-cv-68. Deutsche Bank brought a separate suit against Stewart Title Guaranty Company seeking a declaratory judgment to require Stewart Title Guaranty Company to provide a defense and indemnification in Adel's suit, 12-cv-106. The three cases were consolidated and then have proceeded, as previously noted, beginning with 12-cv-106, which has been resolved by settlement. The court will address 09-cv-385-JD after this case, Adel's suit, has been resolved.

## Discussion

In his amended complaint, Adel brings three claims aimed at establishing his ownership of the Vacant Lot, free and clear of Deutsche Bank's mortgage: Count I - Petition to Quiet Title; Count II - Declaratory Judgment; and Count III - Petition to Invalidate Mortgage and Nullify Effect of Recording Mortgage. Deutsche Bank contends that it holds a mortgage on the Vacant Lot, based on the loan to Alia for purchasing the property from Amir, which is recorded. Deutsche Bank contends that estoppel by deed precludes Adel's claims and that the mortgage on the Vacant Lot is valid and enforceable.

I. Adel Fadili's Motion for Summary Judgment

In support of his motion for summary judgment, Adel contends that he owns the Vacant Lot in fee simple pursuant to the Tax

Collector's deed to him in August of 2005.  Adel does not distinguish between his claims to quiet title, Count I, and for declaratory judgment, Count II, for purposes of summary judgment. In addressing Count III, Adel argues that the mortgage is invalid because Deutsche Bank's mortgage depends on Alia's interest in the property and Alia was not a bona fide purchaser for value from Amir, leaving Adel as the owner of the Vacant Lot.  Adel further argues that Deutsche Bank has no right to foreclose because Deutsche Bank cannot prove that he owes the underlying debt on the loan.

    A.   <u>Title to the Vacant Lot - Counts I and II</u>

The burden is on the party asserting title to prove good title against all others whose rights might be affected by the ruling.  <u>Porter v. Coco</u>, 154 N.H. 353, 357 (2006).  Therefore, Adel bears the burden of showing that he has good title to the Vacant Lot.  "To be entitled to summary judgment, the party with the burden of proof must provide evidence sufficient for the court to hold that no reasonable trier of fact could find other than in its favor."  <u>Am. Steel Fabricators, Inc. v. Local Union No. 7</u>, 536 F.3d 68, 75 (1st Cir. 2008).

Adel contends that he holds the title to the Vacant Lot pursuant to the quitclaim deed from the town to him in August of 2005.  Deutsche Bank contends that Adel is estopped from denying that he sold the Vacant Lot to Amir in January of 2002, based on

Adel's warranty deed to Amir. Adel argues that estoppel by deed does not apply in the circumstances of this case. He also contends that Deutsche Bank cannot claim an interest in the Vacant Lot because Alia was not a bona fide purchaser for value.

1. Estoppel by Deed

New Hampshire has long recognized the doctrine of estoppel by deed through which a party who executes a deed is estopped from denying the facts and covenants in the deed. See Pedersen v. Brook, 151 N.H. 65, 67-68 (2004); Kellison v. McIsaac, 131 N.H. 675, 681-82 (1989); White v. Ford, 124 N.H. 452, 454-55 (1984); 700 Lake Ave. Realty Co. v. Dolleman, 121 N.H. 619, 623-25 (1981); Greenwood v. Wilton R.R., 3 Fost. 261, 1851 WL 2131 at *4 (N.H. 1851). Estoppel by deed prevents a grantor from denying that he had lawful title to the property and that he conveyed the property to his grantee. Hilco Prop. Servs., Inc. v. United States, 929 F.3d 526, 545-46 (D.N.H. 1996). Further, between the grantor and grantee, "the covenants of a warranty deed . . . are not released or qualified by the public record that gives incontrovertible notice of the falsity and consequent utility [of the covenants], . . . ." Fletcher v. Chamberlin, 61 N.H. 438, 1881 WL 4727, at *36 (N.H. 1881). By statute, a warranty deed has "the force and effect of a deed in fee simple" with covenants that the "grantor was lawfully seized in fee simple of the granted premises, that the said premises were free from all

incumbrances [sic], except as stated, that the grantor had good right to sell and convey the same to the grantee, . . ., and that the grantor will . . . warrant and defend the same to the grantee . . . ." RSA 477:27.

Adel signed the warranty deed conveying the Vacant Lot to Amir in January of 2002. At that time, the parties believed that the transaction involved the House Lot. Adel acknowledges, however, as he must, that the deed describes the Vacant Lot, not the House Lot.[1]

Deutsche Bank contends that Adel is now precluded under the doctrine of estoppel by deed from claiming that he did not convey complete title to the Vacant Lot to Amir. In support, Deutsche Bank relies on White v. Ford, 124 N.H. 452 (1984).

In White, the executor of an estate sought to quiet title to property against the interests of the deceased's nephew, Ford, when the deceased had conveyed the property by quitclaim deed to Ford while it was held by the town under a tax collector's deed and was subject to a mortgage held by a third party. Id. at 454. Evidence surrounding the conveyance suggested that Ford had loaned his uncle money to pay back taxes and loaned him other money over a period of years. Id. After the transaction with

---

[1]Although Adel cites White v. Ford, 124 N.H. 452, 455 (1984), to show that the parties' intentions "at the time of the conveyance are determinative," he does not argue that the deed should be reformed by parol evidence to convey the House Lot rather than the Vacant Lot.

8

Ford, the deceased had purchased the property back from the town and lived on the property until his death. Id.

The court concluded that the deceased's after-acquired title to the property obtained from the town passed to Ford under the doctrine of estoppel by deed based on the covenants in the quitclaim deed. Id. at 455. The court also concluded, however, that the quitclaim deed from the deceased to Ford was intended as security for the money Ford lent to his uncle. Id. at 455-56. Therefore, to quiet title to the property in the estate, the court ruled that the executor would have to do equity by satisfying any claims made by Ford against the estate. Id. at 456.

Deutsche Bank asserts that Adel misrepresented the warranty covenants in the deed because the Vacant Lot was not free of encumbrances when he signed the deed that purported to convey greater title than he held.[2] At that time, the Vacant Lot was subject to a tax lien by the town and a mortgage of $110,000 to Apogee Trust along with a conditional assignment of rents and leases. Therefore, Adel signed a deed that purported to convey greater title than he held. However, after Adel signed the warranty deed to Amir, he redeemed the Vacant Lot by paying the taxes and receiving the quitclaim deed from the town.

---

[2]The court notes that there is no record evidence of any intentional misrepresentation. Instead, all of the parties to each transaction were mistaken as to which property was being conveyed, leading to the confusion about what encumbrances existed.

Adel argues that estoppel by deed does not apply here because he <u>did</u> have title to the Vacant Lot when he conveyed it to Amir and he is not attempting to deny his covenant of title that existed in January of 2002.  Whether estoppel by deed might apply when a grantor asserts title to a property that he has conveyed by deed to another, without the problem of incomplete title at the time of the conveyance, need not be decided here.  As Deutsche Bank has demonstrated, Adel did not disclose the tax lien or the mortgage on the Vacant Lot when it was conveyed to Amir, and therefore, at the time of the conveyance Adel did not hold title to the Vacant Lot free and clear of all encumbrances.

Adel contends that despite the valid conveyance of the Vacant Lot to Amir in January of 2002, he regained title to the property in August of 2005 when the town issued a quitclaim deed of the property to him after the back taxes were paid.  Adel does not explain, however, how the town's quitclaim deed could convey title to the Vacant Lot to Adel in light of Adel's prior warranty deed of the Vacant Lot to Amir.[3]  See MacNeill v. Brownell, 133 N.H. 184, 189 (1990).

Adel also contends that, pursuant to RSA 80:89, the town intended, by issuing the quitclaim deed to him, to reinstate title to the Vacant Lot in Adel and to reinstate Apogee Trust's mortgage and conditional assignment of rents and leases.  Adel's

---

[3]Adel's reference to White as support for a theory that the town's intent to convey the Vacant Lot to him by quitclaim deed provided him with good title is not persuasive.

reasoning on the application of RSA 80:89 in this situation is opaque at best.  RSA 80:89 establishes the requirements for notice and opportunity for repurchase to a former owner of property acquired by a town through a tax deed.  Those requirements, apparently, were met in this case, and the property was redeemed.  Because Adel had sold the Vacant Lot to Amir years before he received the quitclaim deed from the town, however, RSA 80:89 has no apparent effect on the title to the Vacant Lot.

   2.  Bona Fide Purchaser

   Adel also contends that Deutsche Bank cannot claim an interest in the Vacant Lot because Deutsche Bank's interest is dependent on Alia's title to the property.  Adel argues that Alia cannot claim valid title because she was not a bona fide purchaser who could defeat Adel's interest conveyed by the town's quitclaim deed.  Adel argues that because the town's tax lien and quitclaim deed to him were recorded, Alia and Deutsche Bank should have discovered them and were on notice of his competing interest in the Vacant Lot.

   When competing interests in real estate exist, any unrecorded interests will be extinguished by a bona fide purchaser for value.  RSA 477:3-a; Hawthorne Trust v. Maine Sav. Bank, 136 N.H. 533, 537 (1992).  "A bona fide purchaser for value is one who acquires title to property for value, in good faith, and without notice of competing claims or interests in the

property." Thomas v. Finger, 144 N.H. 500, 502 (1999) (internal quotation marks omitted).

The primary and fatal problem with applying the bona fide purchaser theory here is that Adel has not shown that he held a competing interest in the Vacant Lot when Alia bought the property from Amir. Even if Adel held an interest in the Vacant Lot through the town's quitclaim deed, he was not a bona fide purchaser because he was on notice that he had previously conveyed the property to Amir. In addition, to the extent Adel's theory challenges the rights of Amir and Alia to the property, that cannot be resolved here when neither Amir nor Alia is a party in this case.

Therefore, Adel has not shown, for purposes of his motion for summary judgment, that he owns the Vacant Lot and that he is entitled to summary judgment on his quiet title claim, Count I, and declaratory judgment claim, Counts II.

B. Mortgage

In Count III, Adel seeks to invalidate Deutsche Bank's mortgage on the Vacant Lot. Adel alleged in the amended complaint that the mortgage was invalid because Alia did not intend to grant a mortgage on the Vacant Lot and Deutsche Bank did not intend to receive a mortgage on that property. He also alleged that Alia could not grant a mortgage because she did not hold title to the Vacant Lot.

For purposes of summary judgment, however, Adel makes a different argument. He now contends that because a mortgage serves as security for a loan, Deutsche Bank cannot foreclose on the mortgaged property when he does not owe the debt for the loan. Deutsche Bank asserts that Adel's mortgage theory is a non sequitur because the undisputed facts, admitted by Adel, establish that the loan to Alia to buy the Vacant Lot was secured by the mortgage on the Vacant Lot.

Adel's mortgage and debt theory again depend on proof that he holds title to the Vacant Lot. He has not shown that to be the case. In the absence of an interest in the mortgaged property, Adel does not appear to have standing to contest the mortgage that was granted on Alia's loan.

II. Deutsche Bank's Motion for Summary Judgment

Deutsche Bank seeks summary judgment in its favor on Adel's claims.[4] As the party moving for summary judgment, Deutsche Bank must show that based on the undisputed material facts, it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the party with the burden of proof, Adel "must present

---

[4] In its memorandum in support of its motion for summary judgment, Deutsche Bank asks for "summary judgment quieting title to the vacant lot in Alia Fadili. Subject to the Note and Mortgage." Mem. doc. no. 17 at 6. Deutsche Bank did not bring a counterclaim seeking to quiet title in Alia Fadili. Therefore, to the extent Deutsche Bank seeks a quiet title judgment on a claim that has not been raised, that relief is not available here.

13

definite, competent evidence sufficient to establish the elements of [his] claim in order to survive a motion for summary judgment." Pina v. Children's Place, 740 F.3d 785, 795 (1st Cir. 2014) (internal quotation marks omitted).

A. Quiet Title and Declaratory Judgment - Counts I and II

In support of summary judgment, Deutsche Bank asserts that Adel cannot deny that he conveyed valid title to the Vacant Lot to Amir through the warranty deed in January of 2002.[5] As in its opposition to Adel's motion for summary judgment, Deutsche Bank relies on the doctrine of estoppel by deed, as applied in White v. Ford, 124 N.H. 452 (1984). Adel contends that the mutual mistake between Adel and Amir as to what property was conveyed makes that transaction voidable as between Adel and Amir and that estoppel by deed does not apply.

1. Effect of Mistake as to Identity of Property Conveyed

Deutsche Bank contends that under Bell v. Morse, 6 N.H. 205, 209-10, 1833 WL 1279, (1833), a grantor of land cannot change the terms of a deed by asserting that the description of the property

---

[5]Although Deutsche Bank states in the introduction to its memorandum that Adel is seeking to invalidate a mortgage "on a vacant parcel of land he owns on Lake Winnipesauke in Alton, New Hampshire," that statement appears to be a typographical error as Deutsche Bank strongly challenges Adel's claim that he owns the Vacant Lot.

in the deed was a mistake.  In response, Adel argues that the transaction is voidable as a mutual mistake.

"'Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party.'"  Gray v. First NH Banks, 138 N.H. 279, 284 (1994) (quoting Restatement (Second) of Contracts § 152(1) (1979)).  Further, "[a] party seeking to avoid an agreement on the basis of mutual mistake must ordinarily avoid the entire contract, including any part that has already been performed."  Derouin v. Granite St. Realty, Inc., 123 N.H. 145, 147 (1983).

To the extent the mutual mistake theory would apply to the transaction between Amir and Adel, Amir would appear to be the adversely affected party because he intended to buy and paid for the House Lot but received property of lesser value, the Vacant Lot.  It is undisputed that Amir did not avoid the conveyance of the Vacant Lot, and Amir is not a party to this suit.  Even if Adel were able to avoid the deed to Amir under the doctrine of mutual mistake, he has not given up the consideration Amir paid in the transaction.  Therefore, Adel's argument based on mutual mistake is inapposite to the circumstances of this case.

2. <u>Estoppel by Deed</u>

As is discussed above in the context of Adel's motion for summary judgment, a grantor is estopped from denying the warranty covenants he gave to the grantee by signing a deed.  Adel does not dispute that he signed the warranty deed to Amir, conveying the Vacant Lot.  Adel argues, however, that despite the deed to Amir, the town's quitclaim deed to Adel "had the effect of vesting [Adel] with fee simple ownership interest in the property," and that estoppel by deed does not apply in this case. Mem., doc. no. 37 at 4.

Contrary to Adel's arguments, estoppel by deed <u>does</u> apply in the circumstances of this case as is explained above in Part I. Therefore, based on the facts and covenants in the warranty deed to Amir, Adel is estopped from denying that he conveyed good title to the Vacant Lot.  Further, Adel provides no persuasive argument to show that the town's quitclaim deed invalidated the warranty deed to Amir.  Therefore, Adel cannot show that he holds title to the Vacant Lot free and clear of Deutsche Bank's mortgage.

B. <u>Mortgage</u>

Deutsche Bank asserts that its mortgage on the Vacant Lot is enforceable.  Adel argues, without citation to authority, that Deutsche Bank cannot profit from Stewart Title Company's negligence in conducting the title search in 2006 and that

Deutsche Bank's recourse is against Stewart Title.  Because Adel cannot show that he holds the title to the Vacant Lot, he has not persuasively contested Deutsche Bank's mortgage on that property.

Therefore, Adel cannot succeed on his claim in Count III to invalidate Deutsche Bank's mortgage.

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 23) is denied.  The defendant's motion for summary judgment (document no. 17) is granted.  The plaintiff's claims in Counts I, II, and III are dismissed by summary judgment.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 6, 2014

cc:   Philip A. Brouillard, Esq.
      Peter G. Callaghan, Esq.
      Robert E. Murphy Jr., Esq.